IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| IN THE MATTER OF THE TRACKING OF A SILVER 2004 TOYOTA HIGHLANDER, PENNSYLVANIA LICENSE PLATE NUMBER KHE-3052, VIN # JTEEP21AX40021878 | Case No. 2:24-mj-79-KFW <br><br> **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Elliot Arsenault, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117 to authorize the installation and monitoring of a tracking device on a silver 2004 Toyota Highlander bearing Pennsylvania license plate number KHE-3052 and vehicle identification number JTEEP21AX40021878 ("the SUBJECT VEHICLE"). Based on the facts set forth in this affidavit, I believe that the SUBJECT VEHICLE is presently being used in furtherance of the distribution of controlled substances, in violation of 21 U.S.C. § 841, and that there is probable cause to believe that the installation of a tracking device on the SUBJECT VEHICLE and use of the tracking device will lead to evidence, fruits, and instrumentalities of the aforementioned crimes as well as to the identification of individuals who are engaged in the commission of those and related crimes.

2. I am a Special Agent ("SA") with Homeland Security Investigations ("HSI") and have been since March 2022. I am currently assigned to HSI's Portland, Maine office. I have participated in numerous criminal investigations, to include matters involving investigations relating to the trafficking of narcotics. Through my training and

experience, I have become familiar with the habits, methods, routines, practices, and procedures commonly employed by persons engaged in drug trafficking.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## **PROBABLE CAUSE**

4. I hereby adopt and incorporate by reference my affidavit filed in support of a search warrant issued January 22, 2024, and authorizing the placement of a geolocation tracker on the SUBJECT VEHICLE (as further defined in my affidavit, attached hereto as Exhibit 1). As described in Exhibit 1, the SUBJECT VEHICLE has, and is being utilized by Target Subject Kenneth ADAMS to further his drug trafficking organization.

5. I know from my participation in this investigation that on about January 26, 2024, Special Agents assigned to Portland, Maine HSI successfully installed the GPS tracking device on the frame of the SUBJECT VEHICLE. On about January 27, the SUBJECT VEHICLE was observed on the GPS tracking program departing the known residence of ADAMS in Union, Maine and driving to Bronx, New York where ADAMS also maintains a residence.

6. I am informed by CS-1 (as defined in Exhibit 1) that ADAMS will often drive to New York and obtain cocaine and fentanyl from a local drug supplier. ADAMS will then drive back to Maine and will distribute the drugs to numerous drug traffickers operating in Midcoast Maine.

7. On about February 6, 2024, the SUBJECT VEHICLE was observed on the GPS tracking program to be located back in Maine at the known residence of CS-1. CS-1 later informed investigators that ADAMS had returned to Maine to "collect debts." After departing the residence of CS-1, ADAMS was observed on the GPS tracking device driving in the direction of Augusta, Maine.

8. Based in part on the information provided by the GPS tracker, I was able to physically locate the SUBJECT VEHICLE at around 53 State Street in Augusta. I witnessed ADAMS walking from the direction of 45 State Street back to the SUBJECT VEHICLE parked at 53 State Street. CS-1 has previously informed investigators that ADAMS has several drug relationships with individuals residing in Augusta. SA Arsenault observed the SUBJECT VEHICLE depart Maine and return to Bronx, New York.

9. On about February 11, 2024, the SUBJECT VEHICLE was observed departing New York and returning to the residence of CS-1. According to CS-1, ADAMS returned to Maine with 1 kilogram of cocaine to sell to local drug traffickers. ADAMS reportedly stated that he intends to initiate a large-scale drug trafficking operation in Maine supplied by sources in New York.

10. On about February 13, 2024, the SUBJECT VEHICLE was observed departing Maine and returning to Bronx, New York.

11. On about February 20, 2024, the SUBJECT VEHICLE was observed departing Bronx, New York and was observed on the GPS tracking program returning to

Maine. CS-1 informed investigators that ADAMS told CS-1 that he was returning to Maine with 500 grams of cocaine and 100 grams of fentanyl.

12.     On about February 21, 2024, CS-1 reported that ADAMS had visited and was enroute to a local drug traffickers' residence. I observed on the GPS tracking device that the SUBJECT VEHICLE was geolocated at 116 Violet Lane in Waldoboro, Maine. I know from my review of law enforcement databases that the address of 116 Violet Lane is associated with a Lise "Lisa" PROCK. The address had been previously identified as a known "trap house," a residence where drug traffickers conduct their illegal drug sales.

13.     CS-1 informed investigators that PROCK allows numerous individuals associated with illegal street gangs to reside at her residence to sell large sums of drugs from her home. 116 Violet Lane has a known history to local law enforcement as a residence where drug sales often take place. PROCK herself has a criminal history associated with drug abuse. I believe, based on my training and experience and my involvement in the investigation, that 116 Violet Lane is housing criminals to assist in the coordinated effort to distribute drugs in Maine. Drug dealers will reside at the residence for a short period of time, 2-4 days, and then depart when they sell all of the drugs, before selecting a new location from which to "trap."

14.     On about February 21, 2024, at approximately 1:16 a.m., the SUBJECT VEHICLE was observed on the GPS tracking program departing the residence of 116 Violet Lane and was monitored driving to the residence associated with ADAMS in Union, Maine.

15.     On about February 22, 2024, the SUBJECT VEHICLE was observed on the GPS tracking device at the vicinity of 33 Lincoln Drive in Lewiston, Maine. After

departing Lewiston, the SUBJECT VEHICLE was observed departing Lewiston, Maine and was geolocated at CS-1's residence. CS-1 informed investigators that ADAMS had approximately $25,000.00 in cash on his person.

16. After departing CS-1's residence, the SUBJECT VEHICLE was observed on the GPS tracking program at the vicinity of Bayside West Road in Owls Head, Maine. According to CS-1, a local drug trafficker resides at 118 Bayside West and was likely an associate of ADAMS.

17. Later on about February 22, 2024, the SUBJECT VEHICLE was observed on the GPS tracking device departing Maine and returning to Bronx, New York. On February 26, 2024, the SUBJECT VEHICLE was observed departing New York and returning to Maine.

18. It is believed that if the requested warrant is authorized, it will facilitate HSI's ability to surveille ADAMS while he is driving the SUBJECT VEHICLE. It is anticipated that, with the aid of the tracking warrant, investigators will be able to determine, among other things, where (and from whom) ADAMS obtains his narcotics, as well as the identities and locations of his Maine customers.

19. Based on the GPS tracker, the SUBJET VEHICLE is currently in Bronx, New York. Based on the pattern of activity observed and described above, I expect the SUBJECT VEHCILE will be present in the District of Maine again within a period of days.

20. For purposes of maintaining the tracking device, it may be necessary to enter onto private property to effect repair, replacement, and removal of the tracking device. Therefore, I am seeking authorization to be present on the curtilage and in the

driveway of the ADAMS Residence (i.e., 281 Common Road in Union, Maine) for the purposes described above.

21. To ensure the safety of the executing officer(s), and to avoid premature disclosure of the investigation, consistent with the information provided above, it is requested that the court authorize installation, maintenance, and removal of the tracking device during both daytime and nighttime hours.

22. In the event the Court grants this application, there will be periodic monitoring of the tracking device during both daytime and nighttime hours for a period not to exceed 45 days following issuance of the warrant. The tracking device may produce signals from inside private garages or other such locations not open to the public or visual surveillance.

## AUTHORIZATION REQUEST

23. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117, that authorizes members of HSI or their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above-described investigation, to install a tracking device on the SUBJECT VEHICLE within the District of Maine within 10 days of the issuance of the proposed warrant, to maintain, repair, and/or replace the tracking device as necessary, and to remove the tracking device from the SUBJECT VEHICLE after the use of the tracking device has ended; to install, maintain, and remove the tracking device during both daytime and nighttime hours; to surreptitiously enter the curtilage and driveway of the ADAMS Residence to effect the installation, repair, replacement, and removal of the tracking

device; and to monitor the tracking device for a period of 45 days following the issuance of the warrant, including when the tracking device is inside private garages and other locations not open to the public or visual surveillance, both within and outside the District of Maine.

24.  In accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I further request that the warrant delay notification of the execution of the warrant for 30 days after the end of the authorized period of tracking (including any extensions thereof) because there is reasonable cause to believe that providing immediate notification may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice would seriously jeopardize the ongoing investigation by prematurely revealing its existence and giving suspects an opportunity to flee from prosecution, destroy or tamper with evidence, intimidate potential witnesses, notify confederates, and change patterns of behavior.

Respectfully submitted,

Elliot Arsenault
Special Agent
Homeland Security Investigations

Sworn to telephonically and signed electronically in accordance with the requirements of Rule 4.1 of the Federal Rules of Criminal Procedures

Date: Mar 14 2024

City and state: Portland, Maine

Judge's signature

Karen Frink Wolf, U.S. Magistrate Judge
Printed name and title